UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**DESHAWN D. JOHNSON,**

              **Plaintiff,**

v.                                         Case No. 21-CV-176

**JOHNNA STANONIK,**

              **Defendant.**

---

## DECISION AND ORDER

---

Plaintiff DeShawn D. Johnson, who is representing himself and is incarcerated at New Lisbon Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Johnson was allowed to proceed on an Eighth Amendment claim against Johnna Stanonik, who was allegedly deliberately indifferent to an excessive risk to Johnson's safety. The court also exercised supplemental jurisdiction over Johnson's state law negligence claim. (ECF No. 11.)

The parties filed cross-motions for summary judgment. (ECF No. 25, 31.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 5, 22.)

### FACTS

*Johnson's Version of Events*

During all relevant time periods, Johnson was incarcerated at Waupun Correctional Institution, at which Stanonik was employed as a Correctional Sergeant. (ECF No. 33, ¶¶ 1-2.) On May 12, 2020, Johnson was housed in the South Cell Hall in

cell G-35, which is a single cell. (ECF No. 28 at 1.) A few days prior, one of the safety screws which attached his bunk to the cell wall fell out of the wall, and on May 12 Johnson gave the screw to non-defendant Correctional Officer Maykayla Wade. (*Id.*). Wade then gave the screw to Stanonik, who placed it in the sergeant's cage. (*Id.*) Johnson asserts that, later that day, he wrote two Information/Interview Requests addressed to Stanonik. (*Id.*) The first one stated: "I gave CO Wade a screw that came undone from the bunk. The screw came out on the 8th; this bunk is unstable. Can I move to another cell." (First Request) (*Id.*) Johnson states that Stanonik simply responded to the First Request with, "NO!". (*Id.*) Johnson's second request read, in relevant part: "In case of a cell search and a staff member sees the bedframe is missing screw, I ask that you verify that on 5-12-20, I gave CO Wade the screw-who gave it to you." (Second Request) (*Id.*) Stanonik responded to the Second Request, stating "the parts to your bunk are in the sergeant's cage. A work order was placed & EMC (Electrical-Maintenance Crew) was notified." (*Id.* at 1-2.)

Maintenance did not fix Johnson's bunk until the next day, May 13, 2020. Johnson asserts that, early in the morning on May 13, 2020, before maintenance fixed his bunk, his bunk collapsed, causing him to fall and lose consciousness. (ECF No. 28 at 2.) At approximately 5:00 a.m. that morning, Johnson stopped non-defendant Correctional Officer Barkhurst while she was conducting "rounds" and told her that his bunk collapsed. (*Id.*) He also showed her the injuries he sustained. (*Id.*) Barkhurst notified the Health Services Unit (HSU), who examined Johnson later that day. (*Id.*) According to Johnson, he was diagnosed with a concussion and a contusion to the

2

forehead with hematoma, caused by falling off his bunk. (*Id.*) Johnson does not submit any medical records to support his story that the bunk collapsed, resulting in him being injured, including any records of having reported his injuries to the HSU or that he was diagnosed with a concussion and a contusion.

Johnson further asserts that an "internal investigation" at Waupun demonstrated that a work order was not written until May 13, 2020, after he was injured. (ECF No. 28 at 2.) He also states that his bunk was not fixed until after he was injured. (*Id.*) He does not submit any materials supporting the findings or describing the internal investigation.

*Stanonik's Version of Events*

Soon after Stanonik's shift started on May 12, 2020, Wade told Stanonik that Johnson had given Wade a bolt from his cell bunk and that his bunk was broken. (ECF No. 33, ¶ 5.) Wade also told Stanonik that Johnson told her he was okay to stay in his current cell until maintenance came to fix the bunk. (*Id.*) Stanonik informed her supervisor, Captain Bauer, about the needed repair. (*Id.*, ¶ 6.)

Stanonik states that she "did not have any immediate concerns about Johnson's safety because the beds are strong and sturdy and held up by an anchor and bolt system that is very secure," so one missing bolt did not seem to be a hazard. (ECF No. 33, ¶ 8.) She submitted pictures of an identical bunk, which show that the bed is attached to the wall in several places. (ECF No. 37.2.) She also assumed that Johnson could still use the bunk because he told Wade he did not need to be moved. (ECF No. 33, ¶ 8.)

After Wade talked to Stanonik, Wade filled out a Repair Work Order. (ECF No. 33, ¶ 9; ECF No. 36-2.) The Repair Work Order was dated May 12, 2020. (ECF No. 36-2.) The Repair Work Order was sent to the Maintenance Department. (ECF No. 33, ¶¶ 9-10.) Records indicate that the Maintenance Department received the Repair Work Order at 6:35 a.m. on May 12, 2020. (*Id.*, ¶ 13.) Non-defendant William Homan was assigned to repair the bunk. (*Id.*, ¶¶ 3, 20.) According to Homan, he replaced and refastened a new bolt and nut to the left-hand corner of the bunk on May 13, 2020. (*Id.*, ¶ 21.) The right-hand corner of the bunk was still attached and there were still three additional anchors in place. (*Id.*, ¶¶ 24, 27.) Homan states that the bunk had not collapsed to the floor; had it collapsed, a much more extensive repair would have been needed. (*Id.*, ¶ 28.)

At approximately 1:00 p.m. on May 12, Stanonik spoke with Johnson, who did not ask to be moved to another cell. (ECF No. 33, ¶ 11.) Stanonik received and responded to the Second Request from Johnson but not the First Request, which she asserts was fabricated. (*Id.*, ¶¶ 14-17.) Specifically, she denies that the handwriting on the response to the First Request is hers, says she would never simply respond "NO!" to any prisoner request, and she denies that the signature is hers. (*Id.*) Stanonik maintains that Johnson never informed her that he wanted to move to a different cell. Even if he had informed her, she did not have the authority to initiate a cell move—only Captain Bauer could have initiated a cell move. (*Id.*, ¶ 7.)

4

# SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Johnson claims that Stanonik violated his Eighth Amendment rights when she was deliberately indifferent to his broken bunk and failed to move him to a new cell. To demonstrate a claim under the Eighth Amendment, a prisoner "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). "A dangerous prison condition constitutes a substantial risk of harm if it deprives an inmate of the minimal civilized measures of life's necessities or offends contemporary standards of decency." *Coffee v. Barber*, 20-cv-965-jdp, 2021 WL 2134921 at *1 (W.D. Wis. May 26, 2021) (citing *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004)).

To prove a violation of the Eighth Amendment, a plaintiff must show that the prison official was deliberately indifferent to a serious risk of substantial harm. *Farmer*, 511 U.S. at 834. "Deliberate indifference is a mental state approaching intent: the defendant need not intend harm, but he must know that an excessive risk exists to the plaintiff's health and safety if no corrective action is taken." *Watkins v. Lancor*, Case No. 13-C-007, 2013 WL 812521 at *1 (E.D. Wis. March 5, 2013) (citing *Farmer*, 511 U.S. at 837). This standard requires showing more than mere negligence. *Id.*

It is undisputed that Stanonik knew the bunk was missing a bolt. However, even accepting Johnson's version of the facts, no reasonable factfinder could conclude that Stanonik was deliberately indifferent to a condition that offended contemporary standards of decency.

6

"Prisons are not required to provide a maximally safe environment, but they must address easily preventable, observed hazards that pose a significant risk of severe harm to inmates." *Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir. 2016). One missing bolt from a bunk that is still anchored to the wall in several other places does not rise to the level of a significant risk of severe harm. Also, Johnson, in the disputed First Request, admitted that he had been sleeping on the bunk since May 8, the day he says the bolt fell out of the wall. So he apparently slept in the bunk without issue for four days after the bolt fell out. That suggests that the bunk was not a hazard that posed an excessive risk of harm. There is nothing in the record to suggest that Stanonik was aware that it was imminently likely that the bunk would collapse because one bolt was no longer attached.

It is well established throughout the Seventh Circuit that prison officials who fail to make repairs on prison equipment are not liable for unforeseen injuries that may subsequently occur where the risk of serious injury was not readily apparent. *See Newsome v. Carter*, Case No. 1:22-cv-618, 2022 WL 3212303 (S.D. Ind. Aug. 9, 2022) (finding that prison officials who knowingly failed to repair and maintain exercise equipment were not deliberately indifferent when the plaintiff was injured on that equipment); *Coffee*, 2021 WL 2134921 (finding that, even though prison officials knew about a broken shower floor and failed to repair it, resulting in injury to the plaintiff, they were not deliberately indifferent because the broken shower floor did not rise to the level that offends contemporary standards of decency); *Clark v. Trammell*, Case No. 18-C-5142, 2021 WL 979157 (N.D. Ill. March 16, 2021) (finding that prison

7

officials' failure to promptly fix an emergency call button, which resulted in the plaintiff suffering a grand mal seizure because he could not call for help, did not rise to the level of deliberate indifference); *Watkins*, 2013 WL 812521 (finding that prison officials' failure to fix a dishwasher and provide safety shoes to work on the wet kitchen floors were negligent at best and their actions did not rise to the level of deliberate indifference); *Williams v. Godinez*, Case No. 10-C-6899, 2012 WL 3245963 (N.D. Ill. Aug. 6, 2012) (finding that no reasonable factfinder could conclude that prison officials were deliberately indifferent when they failed to fix a lighting problem in the plaintiff's cell, causing the plaintiff to live in darkness for several days).

The undisputed evidence shows that Stanonik immediately addressed Johnson's concern about the bunk and made sure Wade put in a repair order. The fact that the bunk was not repaired the same day Stanonik learned that a bolt had fallen out of the wall was out of her control. Johnson's issue with Stanonik is that she did not accommodate a cell move. The evidence demonstrates that Stanonik did not have the authority to move him to another cell. Also, weighing the security and safety issues that affect cell assignments in institutions like Waupun, *see Long v. Bouzek*, Case No. 17-CV-1354-JPS, 2018 WL 6067238 at * 2 (E.D. Wis. Nov. 20, 2018), against the level of risk the bunk posed, her refusal to arrange for a cell transfer was at most negligent, and does not rise to the level of deliberate indifference. Because no reasonable factfinder could conclude that Stanonik was deliberately indifferent in addressing Johnson's concerns with his bunk, Stanonik's motion for summary judgment is granted, and Johnson's motion for summary judgment is denied.

8

## CONCLUSION

For the foregoing reasons Stanonik's motion for summary judgment is granted and Johnson's motion for summary judgment is denied. At screening, the court exercised supplemental jurisdiction over Johnson's state law negligence claim; however because the court has dismissed the § 1983 claim, the court declines to continue to exercise that jurisdiction. *See* 28 U.S.C. §1367(c); *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015). Stanonik also argued she was entitled to qualified immunity. Because the court grants summary judgment on the merits, it does not need to address the qualified immunity argument. The case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Johnson's motion for summary judgment (ECF No. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that Stanonik's motion for summary judgment (ECF No. 31) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely

requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 22nd day of February, 2023.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge